**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-11-0000647**
**11-JAN-2013**
**08:45 AM**

NO. CAAP-11-0000647

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
ROBERT F. ALBERT, aka William Albert, Defendant-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 10-1-1291)


SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Leonard and Ginoza, JJ.)

Defendant-Appellant Robert F. Albert, aka William Albert (Albert) appeals from the July 27, 2011 "Judgment of Conviction and Sentence" for assault in the second degree, in violation of Hawaii Revised Statutes (HRS) § 707-711 (Supp. 2011), entered in the Circuit Court of the First Circuit (circuit court).[1]

On appeal, Albert contends that the circuit court committed plain error by failing to provide a cautionary instruction stating the factors to be considered in assessing the accuracy of eyewitness identification.[2]

---

[1]  The Honorable Edward H. Kubo Jr. presided.

[2]  Although the notice of appeal was untimely, an exception to timely appeals has been recognized in similar circumstances in criminal cases. See State v. Irvine, 88 Hawai'i 404, 407, 967 P.2d 236, 239 (1998).

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant legal authorities, we resolve Albert's point of error and affirm the judgment.

Albert acknowledges that "the Hawai'i Supreme Court has repeatedly held that the giving of special instructions on eyewitness identification is within the discretion of the trial judge." See State v. Vinge, 81 Hawai'i 309, 316, 916 P.2d 1210, 1217 (1996); State v. Okumura, 78 Hawai'i 383, 404, 894 P.2d 80, 101 (1995); State v. Pahio, 58 Haw. 323, 331-332, 568 P.2d 1200, 1206 (1977); and State v. Padilla, 57 Haw. 150, 162, 552 P.2d 357, 365 (1976). Albert asserts, however, that "a cautionary jury instruction regarding eyewitness identification should be required in any case in which eyewitness identification is a critical issue." This is the same argument made by the defendant in State v. Cabagbag, 127 Hawai'i 302, 309, 277 P.3d 1027, 1034 (2012), which was recently decided while the instant case was on appeal.

In Cabagbag, the Hawai'i Supreme Court agreed with Cabagbag's argument when the defense requests the instruction, but gave its ruling prospective effect. The supreme court first held that "in criminal cases, the circuit courts must give the jury a specific eyewitness identification instruction whenever identification evidence is a central issue in the case, and it is requested by the defendant[.]" Cabagbag, 127 Hawai'i at 304, 277 P.3d at 1029. In so holding, the supreme court abrogated Padilla, Pahio, Okumura, and Vinge, the cases that guided the circuit court in issuing its jury instructions in this case.

However, the supreme court also held in Cabagbag that "this rule should be given prospective effect." Cabagbag, 127 Hawai'i at 317, 277 P.3d at 1042. Specifically, the court held that "as to [Cabagbag] and other cases that are currently pending

on direct appeal, this court will apply the rule then in effect when the cases were tried." Id.

Albert's trial began on May 19, 2011; he was sentenced on July 27, 2011; and he filed his notice of appeal on August 29, 2011. The supreme court decided Cabagbag on May 17, 2012. When the supreme court issued its opinion in Cabagbag, briefing in this case had not been completed; it was "pending on direct appeal" in this court. Therefore, we do not review this case under the new rule decided in Cabagbag, but instead, under the rule in effect at the time of Albert's trial. That is, similar to the analysis applied to the defendant in Cabagbag, "we must examine all aspects of the trial, including the opening statements, the cross-examination of prosecution witnesses, the arguments to the jury, and the general instructions given by the court, to determine whether the jury's attention was adequately drawn to the identification evidence." 127 Hawai'i at 317, 277 P.3d at 1042 (citation omitted). Moreover, under the rule applicable when Albert was tried, the giving of special instructions on identification was within the discretion of the trial court. Padilla, 57 Haw. at 162, 552 P.2d at 365. In this case, however, we consider whether the circuit court committed plain error, because Albert did not request a more specific jury instruction on identification during trial.

Here, the record shows that the jury's attention was adequately drawn to the issue of eyewitness identification and the evidence related thereto. First, opening statements by the prosecution and the defense drew attention to the issue of eyewitness identification. The prosecuting attorney emphasized that the complaining witness, Kevin Costello (Costello), had seen Albert twice the night of the assault and had a clear memory of Albert's face. The defense counsel, in turn, acknowledged that there was no dispute that Costello had been injured and beaten on the night in question, but asserted that "the evidence will show

that it was not [Albert]." The defense counsel told the jury that Albert was not in the vicinity of the assault when it took place and that, after all the evidence was in, the jury would "find that this was a case of mistaken identity[.]"

Second, on cross-examination of Costello, the defense counsel emphasized Costello's testimony that he had seen Albert less than ten minutes during the first encounter, and less than a minute during the second encounter. On further cross-examination, defense counsel asked several questions about Costello's description of Albert made to the police, such as Albert's skin and hair color, his weight and height, and the clothes he was wearing, suggesting that Costello's description did not match Albert's appearance.

Michaele Mahelona (Mahelona), a resident at the apartment where the assault took place, was cross-examined about what she saw. She testified that she heard, but did not see, the fight. When she stepped outside, she saw an older male about ten feet away, taking off on a bicycle. She described him as being of medium build, maybe about 5'8," but that she "couldn't see that well. You know, it was getting dark and there was only lights." She said she only saw him from the back and heard him yelling.

When defense counsel questioned police detective Ronald Lopes, counsel suggested inconsistencies between Costello's description of Albert and the photos used in the photo lineup. Defense counsel raised the issue that there was only one photo lineup and that it was not presented to Costello until nearly a month after the incident. Defense counsel also questioned the fact that the detective did not interview the woman who had witnessed the initial altercation. Defense counsel also asked questions that revealed that the bicycle used by the assailant on the night of the attack, and the white hat Costello said Albert was wearing, were never found.

Third, the issue of eyewitness identification was also addressed during the parties' closing arguments. The prosecuting attorney emphasized that the State had the burden to prove beyond a reasonable doubt that it was Albert, and not someone else, who caused Costello's injuries. She pointed out that Costello had identified Albert twice, once in the photo lineup and then in court. She argued that Costello's testimony was credible, but that the defense witness and Albert's testimonies were not credible.

In defense counsel's closing argument, he emphasized the issue of eyewitness identification, arguing: "But what the State hasn't proven and what they have to prove in order for you to find him guilty is that [Albert] was the one who inflicted those injuries." Defense counsel then pointed out possible inconsistencies in the testimony of the State's witnesses and questioned their credibility. Defense counsel also argued the alibi defense, suggesting that Albert had been elsewhere that night.

In addition to the above, the circuit court's instructions also drew the jury's attention to the identification issue and related evidence. In Jury Instruction No. 6, the circuit court instructed:

> It is your exclusive right to determine whether and to what extent a witness should be believed and to give weight to his or her testimony accordingly. In evaluating the weight and credibility of a witness's testimony, you may consider the witness's appearance and demeanor; the witness's manner of testifying; the witness's intelligence; the witness's candor or frankness, or lack thereof; the witness's interest, if any, in the result of this case; the witness's relation, if any, to a party; the witness's temper, feeling, or bias, if any has been shown; the witness's means and opportunity of acquiring information; the probability or improbability of the witness's testimony; the extent to which the witness is supported or contradicted by other evidence; the extent to which the witness has made contradictory statements, whether in trial or at other times; and all other circumstances surrounding the witness and bearing upon his or her credibility.

> Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. In weighing the effect of inconsistencies or discrepancies, whether they occur within one witness's testimony or as between different witnesses, consider whether they concern matters of importance or only matters of unimportant detail, and whether they result from innocent error or deliberate falsehood.

These general instructions on witness credibility are similar to the instructions given in Cabagbag. In Cabagbag, given the opening and closing statements of counsel, the cross-examination of prosecution witnesses, and the general instructions given by the trial court, the supreme court held that, under the rule existing when Cabagbag was tried, the jury's attention was adequately drawn to the identification issue. 127 Hawai'i at 317-18, 277 P.3d at 1042-43; see also Okumura, 78 Hawai'i at 405, 894 P.2d at 102.

Jury Instruction No. 20, originally identified as "Supplemental Instruction No.1, Misidentification," instructed the jury:

> The burden of proof is on the prosecution with reference to every element of a crime charged, and <u>this burden includes the burden of proving beyond a reasonable doubt the identity of the defendant as the person responsible for the crimes charged.</u>

(Emphasis added.) This instruction follows the instruction considered in Vinge. 81 Hawai'i at 317, 916 P.2d at 1218. Given such an instruction, as well as the cross-examination and arguments of defense counsel regarding the identification issue, the supreme court held in Vinge that the jury's attention was adequately drawn to the issue of identification. Id.

In this case, the opening statements and closing arguments of counsel, the cross-examination of the prosecution eyewitnesses, and the jury instructions given by the circuit court drew adequate attention to the identification issue and the related evidence. Under these circumstances and the rule applicable at the time Albert was tried, the circuit court was

not required to give a more specific instruction.  <u>Padilla</u>, 57 Haw. at 161-62, 552 P.2d at 364-65.  We thus conclude that it was not plain error for the circuit court not to give a more specific jury instruction on eyewitness identification.

Therefore,

IT IS HEREBY ORDERED that the "Judgment of Conviction and Sentence" entered on July 27, 2011 in the Circuit Court of the First Circuit is affirmed.

DATED:  Honolulu, Hawai'i, January 11, 2013.


On the briefs:

William Domingo
for Defendant-Appellant

Sonja P. McCullen
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge